**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KATE SPADE, LLC,<br><br>                              Plaintiff,<br><br>          v.<br><br>WEN BEN ZHOU d/b/a AUTENTICKATESPADE.COM, CHEAPKATESPADE.COM, KATESPADEGB.CO.UK, KATE-SPADE-UK.CO.UK, NEWKATESPADEJPSHOP.COM, BIZNIZZUPGRADE.COM, and MYCHCEDO.COM; ZHONG LIANG d/b/a KATESPADELLC.CO.UK; HUACHAO CHEN d/b/a KATESPADES.CO.UK; WANG JIU d/b/a BLUEKATESPADE.COM; and TIAN MENG d/b/a KATESPADEUS.COM,<br><br>                              Defendants. | CIVIL ACTION NO. 14-CV-5665 (RJS)<br><br>**[FILED UNDER SEAL PURSUANT TO 15 U.S.C. § 1116]** |

**MEMORANDUM OF LAW IN SUPPORT OF
KATE SPADE'S *EX PARTE* APPLICATION FOR
A TEMPORARY RESTRAINING ORDER, SEIZURE ORDER,
ORDER TO DISABLE CERTAIN WEBSITES,
ASSET RESTRAINING ORDER, EXPEDITED DISCOVERY ORDER
<u>AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION</u>**

**DAVIS WRIGHT TREMAINE LLP**
**1633 Broadway, 27th Floor**
**New York, NY 10019-6708**
**Telephone: (212) 489-8230**
**Facsimile: (212) 489-8340**

*Attorneys for Kate Spade, LLC*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT .................................................................................................. 1

FACTUAL BACKGROUND .................................................................................................... 2

    A.    Kate Spade's Trademarks and Products ................................................................. 2

    B.    Defendants' Illegal Activities .................................................................................. 5

        1.    Defendants' Sales of Counterfeit Goods on Infringing Websites .............. 5

        2.    Defendants' Registration of Infringing Domain Names ........................... 7

ARGUMENT .......................................................................................................................... 10

    I.    KATE SPADE IS ENTITLED TO A TEMPORARY RESTRAINING
        ORDER AND PRELIMINARY INJUNCTION ENJOINING
        DEFENDANTS' ILLEGAL ACTS ................................................................. 10

        A.    Defendants' Sale of Counterfeit Goods Irreparably Harms the KATE
            SPADE Marks and Kate Spade's Goodwill and Business ........................ 10

        B.    Kate Spade is Likely to Prevail on Its Claims for Trademark
            Infringement and Counterfeiting ............................................................... 12

            1.    The KATE SPADE Marks Are Valid And Protectable ................ 12

            2.    Consumers Are Likely To Be Confused As To The Source of
                Defendants' Counterfeit Goods .................................................... 13

        C.    Kate Spade Will Likely Prevail on its Anticybersquatting Consumer
            Protection Act Claims ............................................................................... 13

            1.    The KATE SPADE Marks Are Distinctive and Famous ............. 14

            2.    The Domain Names Are Identical Or Confusingly Similar to
                the KATE SPADE Marks .............................................................. 14

            3.    Defendants Have Bad Faith Intent to Profit from the KATE
                SPADE Marks .............................................................................. 15

        D.    There is a Fair Ground for Litigation and the Balance of Hardships
            Tips Decidedly in Kate Spade's Favor ..................................................... 16

    II.    THIS COURT HAS THE AUTHORITY TO ISSUE AN EX PARTE
        TEMPORARY RESTRAINING ORDER AND SEIZURE ORDER ................. 16

III.    KATE SPADE IS ENTITLED TO AN ORDER PREVENTING THE FRAUDULENT TRANSFER OF ASSETS ........................................................ 18

IV.    KATE SPADE IS ENTITLED TO EXPEDITED DISCOVERY ........................ 20

V.    SERVICE OF PROCESS BY EMAIL IS WARRANTED IN THIS CASE ........ 21

CONCLUSION ................................................................................................................. 25

ii

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC.,*
     447 F. Supp. 2d 266 (S.D.N.Y. 2006) *aff'd sub nom. 24 Hour Fitness USA,*
     *Inc. v. 24/7 Tribeca Fitness, LLC*, 247 F. App'x 232 (2d Cir. 2007) ......................................14

*Act II Jewelry, LLC v. Mu Ying Zhu,*
     No. 2:09CV407, 2010 WL 2521340 (E.D. Va. June 7, 2010)................................16

*Albert Furst von Thurn und Taxis v. Karl Prince von Thurn und Taxis*,
      2006 WL 2289847 (S.D.N.Y. 2006)....................................................................14

*Animale Grp. Inc. v. Sunny's Perfume, Inc.*,
     256 F. App'x 707, 709 (5th Cir. 2007) .................................................................19

*Banff, Ltd. v. Federated Dep't Stores Inc.*,
     841 F.2d 486 (2d Cir. 1988)..........................................................................12, 13

*Bank of Credit & Commerce Int'l (Overseas) Ltd. v. Tamraz,*
     2006 U.S. Dist. LEXIS 39256 (S.D.N.Y. June 13, 2006) .......................................23

*Bos. Prof'l Hockey Ass'n v. Dall. Cap & Emblem Mfg., Inc.*,
     510 F.2d 1004 (5th Cir. 1975), *cert. denied*, 423 U.S. 868 (1975)........................10

*Chanel, Inc. v. Lin,*
     No. C-09-04996 JCS, 2010 U.S. Dist. LEXIS 61295 (N.D. Cal. May 7, 2010) ...................22

*Chanel, Inc. v. Zhixian,*
     No. 10-CV-60585, 2010 WL 1740695 (S.D. Fla. Apr. 29, 2010) ..........................22

*Coach, Inc. v. The Partnerships & Unincorporated Associations Identified on*
     *Schedule "A"*,
     No. 13 C 6618, 2013 WL 5477573 (N.D. Ill. Oct. 1, 2013) .................................15

*Corning Glass Works v. Jeanette Glass Co.*,
     308 F. Supp. 1321 (S.D.N.Y. 1970), *aff'd*, 432 F.2d 784 (2d Cir. 1970)...............16

*DaimlerChrysler v. The Net Inc.*,
     388 F.3d 201 (6th Cir. 2004) ..............................................................................15

*Dallas Cowboys Cheerleaders v. Pussycat Cinema, Ltd.*,
     604 F.2d 200 (2d Cir. 1979)................................................................................10

*Diarama Trading Co., Inc. v. J. Walter Thompson U.S.A., Inc.*,
    No. 01Civ.2950, 2005 WL 2148925 (S.D.N.Y. Sept. 6, 2005)................................................14

*El Greco Leather Prods. Co. v. Shoe World, Inc.*,
    806 F.2d 392 (2d Cir. 1986).................................................................................................10

*Facebook Inc. v. Banana Ads LLC*,
    No. C-11-3619, 2012 WL 1038752 (N.D. Cal. Mar. 27, 2012) ............................................23

*Farouk Systems, Inc. v. EYOU Int'l Trading Co., Ltd.*,
    No. 4:10-Civ-2672 (S.D. Tex. Aug. 2, 2010) ...........................................................18, 22, 23

*Fendi Adele S.R.L. v. Filene's Basement, Inc.*,
    696 F. Supp. 2d 368 (S.D.N.Y. 2010)...................................................................................13

*Firma Melodiya v. ZYX Music GmbH*,
    882 F. Supp. 1306 (S.D.N.Y. 1995)................................................................................10, 11

*Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*,
    25 F.3d 119 (2d Cir. 1994)....................................................................................................10

*Home Box Office, Inc. v. Showtime/Movie Channel, Inc.*,
    832 F.2d 1311 (2d Cir. 1987)................................................................................................11

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*,
    596 F.2d 70 (2d Cir. 1979)....................................................................................................10

*Kate Spade LLC v. Saturdays Surf LLC*,
    950 F. Supp. 2d 639 (S.D.N.Y. 2013)...........................................................................4, 6, 14

*Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*,
    51 F.3d 982 (11th Cir. 1995) ................................................................................................19

*Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*,
    378 F. Supp. 2d 448 (S.D.N.Y. 2005)...................................................................................13

*Louis Vuitton Malletier & Oakley, Inc. v. Veit*,
    211 F. Supp. 2d 567 (E.D. Pa. 2002) ...................................................................................15

*Lucas Nursery & Landscaping, Inc. v. Grosse*,
    359 F.3d 806 (6th Cir. 2004) ................................................................................................14

*Mattel, Inc. v. Internet Dimensions, Inc.*,
    No. 99 Civ. 10066, 2000 WL 973745 (S.D.N.Y. July 13, 2000) ........................................14

*Montblanc-Simplo Gmbh v. Montblancpensale.org*,
    297 F.R.D. 242 (E.D. Va. 2014) ..........................................................................................15

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)..................................................................................................23

*The Nat'l Football League v. Chen Cheng d/b/a nfljerseydiscount.com*,
   No. 11-Civ-0344 (WHP), (S.D.N.Y. Jan. 19, 2011)....................................18, 22, 23

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*,
   704 F. Supp. 2d 305 (S.D.N.Y. 2010)..............................................................11, 12

*The North Face Apparel Corp. v. Fujian Sharing Import & Export Ltd.*,
   No. 10-civ-1630 (S.D.N.Y. Mar. 2, 2010)...................................................17, 22, 23

*The North Face Apparel Corp. v. Jun Song*,
   No. 10-Civ-5604 (LTS) (S.D.N.Y. July 23, 2010) ......................................18, 22, 23

*Notaro v. Koch*,
   95 F.R.D. 403, 405 (S.D.N.Y. 1982) .........................................................................20

*Omega Importing Corp. v. Petri-Kine Camera Co.*,
   451 F.2d 1190 (2d Cir. 1971)....................................................................................12

*Otokoyama Co. v. Wine of Japan Import, Inc.*,
   175 F.3d 266 (2d Cir. 1999)......................................................................................12

*Paco Rabanne Parfums, S.A. v. Norco Enterps.*,
   680 F.2d 891 (2d Cir. 1982)......................................................................................11

*Phillip Morris USA Inc. v. Veles Ltd.*,
   2007 U.S. Dist. LEXIS 19780 (S.D.N.Y. Mar. 13, 2007) ...................................22, 23

*Polaroid Corp. v. Polarad Electronics Corp.*,
   287 F.2d 492 (2d Cir. 1961), *cert. denied*, 368 U.S. 820 (1961).............................13

*Polymer Tech. Corp. v. Mimran*, 975 F.2d 58, 62 (2d Cir. 1992),
   *amended reported at* 1992 U.S. App. LEXIS 32204 (2d Cir. 1992),
   *aff'd*, 37 F.3d 74 (2d Cir. 1994) ...............................................................................10

*Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc.*,
   754 F.2d 91 (2d Cir. 1985)........................................................................................11

*Prediction Co. LLC v. Rajgarhia*,
   09 Civ. 7459, 2010 U.S. Dist. LEXIS 26536 (S.D.N.Y. Mar. 22, 2010) ...............23

*PRL USA Holdings, Inc. v. Kiat*,
   No. 10-Civ-6456 (PGG) (S.D.N.Y. Sept. 1, 2010)....................................18, 22, 23

*Reebok Int'l Ltd. v. Marnatech Enters.*,
   737 F. Supp. 1521, 1526 (S.D. Cal. 1989), *aff'd*, 970 F.2d 552 (9th Cir. 1992) ..............19, 20

v

*Reebok Int'l, Ltd. v. Marnatech Enters.*,
  970 F.2d 552 (9th Cir. 1992) ............................................19

*Republic of Philippines v. Marcos*,
  862 F.2d 1355 (9th Cir. 1988), *cert. denied*, 490 U.S. 1035 (1989)........................................19

*Rio Props., Inc. v. Rio Int'l Interlink*,
  284 F.3d 1007 (9th Cir. 2002) ............................................22, 23

*Spear, Leeds, & Kellogg v. Rosado*,
  122 F. Supp. 2d 403 (S.D.N.Y. 2000) *aff'd*, 242 F.3d 368 (2d Cir. 2000) ............................15

*Tishman v. The Associated Press*,
  05 Civ. 4278, 2006 U.S. Dist. LEXIS 4622 (S.D.N.Y. Feb. 6, 2006) ....................................23

*Tory Burch LLC v, Yong Sheng Int'l Trade Co., Ltd*,
  No. 10-Civ-9366 (DAB) (S.D.N.Y. Dec. 17, 2010) ....................................18, 22, 23

*True Religion Apparel, Inc. v. Xiaokang Lei*,
  No. 11-cv-8242 (S.D.N.Y. Nov. 17, 2011)............................................18

*Twentieth Century Fox Film Corp. v. Mow Trading Corp.*,
  749 F. Supp. 473 (S.D.N.Y. 1990)............................................20

*Warner Bros., Inc. v. Gay Toys, Inc.*,
  658 F.2d 76 (2d Cir. 1981)............................................10

*Webadviso v. Bank of Am. Corp.*,
  448 F. App'x 95 (2d Cir. 2011)............................................15

*Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb, Inc.*,
  698 F.2d 862 (7th Cir. 1983) ............................................10

*Williams-Sonoma Inc. v. Friendfinder Inc.*,
  C06-06572 JSW, 2007 WL 1140639 (N.D. Cal. Apr. 17, 2007)............................................22

**Federal Statutes**

15 U.S.C. § 1057(b) ............................................12

15 U.S.C. § 1114............................................17, 18

15 U.S.C. § 1115(b) ............................................14

15 U.S.C. § 1116............................................16

15 U.S.C. § 1116(d) ............................................13

15 U.S.C. § 1116(d)(1)(A)............................................17

15 U.S.C. § 1116(d)(4)(B) ................................................................................................17

15 U.S.C. § 1117 ..............................................................................................................19

15 U.S.C. § 1125(d)(1)(A) ...............................................................................................13

15 U.S.C. § 1125(d)(1)(B)(i) ...........................................................................................15

15 U.S.C. § 1125(d)(1)(B)(i)(IX) .....................................................................................15

15 U.S.C. § 1125(d)(1)(C) ...............................................................................................14

15 U.S.C. § 1127 ..............................................................................................................13

Anticybersquatting Consumer Protection Act of 1996 (the "ACPA") .......................12, 13, 14, 15

Trademark Act of 1946, 15 U.S.C. §§ 1051 et seq. (the "Lanham Act") ............................. *passim*

## Rules

Federal Rule of Civil Procedure 4 ....................................................................................22

Federal Rule of Civil Procedure 34 ..................................................................................20

Federal Rule of Civil Procedure 30 ..................................................................................20

Federal Rule of Civil Procedure 65 ..................................................................................19

Federal Rule of Civil Procedure 64 ..................................................................................19

Federal Rule of Civil Procedure 65 ..................................................................................19

## Legislative History

145 Cong. Rec. S10,515 ...................................................................................................12

Senate-House Joint Explanatory Statement on Trademark Counterfeiting
    Legislation,
        130 Cong. Rec. H12076, at 12080 (Oct. 10, 1984) ...............................................17

## Other Authorities

4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1061, at 216 (2d ed.
    1987) ...............................................................................................................................22

Hague Convention on the Service Abroad of Judicial and Extra-Judicial
    Documents
        in Civil or Commercial Matters, November 15, 1965, Article 1 ...........................22

DWT 24487769v6 0096356-000009

Plaintiff Kate Spade, LLC ("Kate Spade" or "Kate Spade") submits this Memorandum of Law in support of its *ex parte* Application for a Temporary Restraining Order, Seizure Order, Order to Disable Certain Websites, Asset Restraining Order, Expedited Discovery Order and Order to Show Cause for Preliminary Injunction as against defendants WEN BEN ZHOU d/b/a AUTENTICKATESPADE.COM, CHEAPKATESPADE.COM, KATESPADEGB.CO.UK, KATE-SPADE-UK.CO.UK, BIZNIZZUPGRADE.COM, and MYCHCEDO.COM ("Wen Ben Zhou"); ZHONG LIANG d/b/a KATESPADELLC.CO.UK ("Zhong Liang"); HUACHAO CHEN d/b/a KATESPADES.CO.UK ("Huachao Chen"); WANG JIU d/b/a BLUEKATESPADE.COM ("Wang Jiu"); and TIAN MENG d/b/a KATESPADEUS.COM ("Tian Meng," and, together with defendants Wen Ben Zhou, Zhong Liang, Huachao Chen and Wang Jiu, "Defendants).

## PRELIMINARY STATEMENT

Defendants operate a network of websites, many of which use domain names containing Kate Spade's famous trademarks ("Infringing Websites").  Operating from China through these Infringing Websites, Defendants offer for sale and/or sell into the United States counterfeits of goods bearing Kate Spade's trademarks.

In conducting their illegal enterprise, Defendants utilize the global reach of the Internet to evade capture and detection by concealing their identities, locating their manufacturing and sales operations offshore, and sending counterfeit goods to consumers in the U.S. through the mail.

Defendants' illicit conduct is causing, and will continue to cause, irreparable harm to Kate Spade's reputation and goodwill.  Kate Spade therefore respectfully requests that this Court issue:  (i) a temporary restraining order and preliminary injunction against Defendants enjoining their manufacture, importation, distribution, offer for sale, and sale of the counterfeit Kate Spade products; (ii) an order of seizure, (iii) an order temporarily disabling Defendants' domain names

1

and counterfeiting websites, (iv) an order temporarily restricting the transfer of Defendants'

assets to preserve Kate Spade's rights to an equitable accounting; (v) an order for expedited

discovery of Defendants' records relating to the manufacture, distribution, offer for sale and sale

of the counterfeit KATE SPADE Products and Defendants' unauthorized use of Kate Spade's

trademarks; and (vi) an order allowing service by electronic mail and/or web form submission.

Kate Spade requests this relief *ex parte* because experience in other cases has shown that,

if given notice, defendants will move their operations to new domains and their profits beyond

the reach of this Court thereby lessening any impact on their business.  Without *ex parte* relief,

Kate Spade will be denied any form of relief that might deter Defendants and minimize the

irreparable harm to Kate Spade.

<strong><u>FACTUAL BACKGROUND</u></strong>

**A.      Kate Spade's Trademarks and Products**

Kate Spade is the owner of the entire right, title and interest in and to the valid and

subsisting and federally-registered KATE SPADE, KATE SPADE NEW YORK, KATE SPADE

SATURDAY and LIVE COLORFULLY trademarks, the following stylized design marks:



kate spade, and, and other registered

trademarks (the "KATE SPADE Marks").[1]  Founded in 1993, Kate Spade is world famous for the

line of clothing and accessories it designs, manufactures, and distributes under the KATE

SPADE Marks (the "KATE SPADE Products"), and for over twenty-one (21) years, Kate Spade

has continuously and extensively used the KATE SPADE Marks in connection with the design,

---

[1] Declaration of Shawn Brosnan, dated July 23, 2014 ("Brosnan Decl."), ¶ 5.

2

manufacture, marketing, offer for sale and/or sale of the KATE SPADE Products.[2]  Kate Spade

maintains quality control standards for all KATE SPADE Products and genuine goods are

inspected and approved prior to distribution and sale.[3]  Kate Spade has spent millions of dollars

in advertising and promoting the KATE SPADE Products, and Kate Spade's marketing efforts,

combined with its attention to the quality, design and construction of its products, generate

hundreds of millions of dollars in sales each year.[4]

Kate Spade sells and distributes the KATE SPADE Products through its own shops

located throughout the United States and 24 other countries; finer department stores such as Saks

Fifth Avenue, Bloomingdale's, Nordstrom, Bergdorf Goodman, and Neiman Marcus; and its

e-commerce websites located at KateSpade.com and Saturday.com:[5]


KATE SPADE shop


KATE SPADE SATURDAY shop

---

[2] *Id.* ¶ 6.
[3] *Id.* ¶ 9.
[4] *Id.* ¶ 7.
[5] *Id.* ¶ 8, Ex. A.

3

 

KateSpade.com                     Saturday.com

Kate Spade has expended and expends large sums of money in advertising and promoting the KATE SPADE Products to the trade and public, including through online social media, including Facebook, Twitter, Google+, YouTube, Tumblr, Instagram and Pinterest.[6]

As a result of Kate Spade's extensive advertising and promotion, widespread sales, the care and skill utilized in the manufacture of the KATE SPADE Products, and the uniform high quality of the KATE SPADE Products sold under or in connection with KATE SPADE Marks, the KATE SPADE Marks and KATE SPADE Products have become famous and stand for quality goods.[7]  Based on the extensive sales and wide popularity of the KATE SPADE Products, the KATE SPADE Marks have developed fame and significance in the minds of the purchasing public in the United States and worldwide and are singularly associated with and identified by the purchasing public as originating with Kate Spade.[8]  The fame of the KATE SPADE trademark has been relied upon by a federal court awarding judgment to Kate Spade.[9]

---

[6] *Id.* ¶ 10, Ex. B.
[7] *Id.* ¶ 11.
[8] *Id.* ¶ 12.
[9] *Id.*; *Kate Spade LLC v. Saturdays Surf LLC*, 950 F. Supp. 2d 639, 645, 648 (S.D.N.Y. 2013).

4

**B.    Defendants' Illegal Activities**

**1.    Defendants' Sales of Counterfeit Goods on Infringing Websites**

Kate Spade makes significant efforts to combat the distribution and sale of counterfeit and infringing goods.[10] As part its enforcement efforts, Kate Spade has identified unauthorized websites operated by Defendants that are selling goods bearing counterfeits of the KATE SPADE Marks (the "Counterfeit Goods").[11]  Defendants are operating Infringing Websites selling Counterfeit Goods, for example:[12]



AuthenticKateSpade.com



KateSpadeLLC.co.uk



KateSpadeUS.com



mychcedo.com

---

[10] Brosnan Dec. ¶ 13.

[11] *Id.* ¶ 14.

[12] *Id.* ¶ 15, Ex. C.

The Infringing Websites are designed to appear to unknowing consumers to be legitimate and sophisticated web stores operated by Kate Spade and/or authorized to sell genuine KATE SPADE Products, including one or more of them: (i) prominently bearing the KATE SPADE Marks; (ii) featuring high resolution images that are copyrighted by Kate Spade; (iii) using sophisticated interfaces resembling those of Kate Spade's own online stores, themed promotional sales and online service contact information; and (iv) bearing the logos of major payment processors, shippers and e-commerce data security companies.[13]  All but one of the Infringing Websites are written in English and accept payment in U.S. dollars and other currencies using major credit cards.  All of the Infringing Websites are accessible in the United States, including New York City, and some of the Infringing Websites include estimated shipping times to the United States or links to track packages sent to the United States.[14]

Kate Spade did not manufacture, inspect, package or approve these Counterfeit Goods prior to sale or distribution, and Defendants are in no way authorized to sell such Counterfeit Goods.[15]  The Counterfeit Goods bear marks that are identical to or substantially indistinguishable from the KATE SPADE Marks and are of the same types of goods offered by Kate Spade.[16]  At least some of the Counterfeit Goods sold on the Infringing Websites were sold at incorrect price points, well below those of genuine KATE SPADE Products.[17]  Kate Spade did not authorize the sales of the Counterfeit Goods.[18]

Defendants' advertising and sale of Counterfeit Goods bearing the KATE SPADE Marks, which are not of the same quality as genuine products, causes ongoing and considerable damage

---

[13] *Id.* ¶ 16, Ex. C.
[14] *Id.* ¶ 17, Ex. C.
[15] *Id.* ¶ 18.
[16] *Id.*
[17] *Id.*
[18] *Id.*

to the KATE SPADE Marks and Kate Spade's businesses by confusing consumers and misdirecting and diverting traffic away from authorized retailers and legitimate websites.[19]  At least one of the Infringing Websites has been the subject of a consumer complaint for a gross overcharge and sale of and obvious counterfeit of a KATE SPADE Product.[20]

    2.      **Defendants' Registration of Infringing Domain Names**

In order to further deceive customers and so that the sites are highly ranked in search engine searches for KATE SPADE Products, Defendants use domain names containing KATE SPADE Marks for most of the Infringing Websites.  Defendants also have registered additional domain names containing KATE SPADE Marks—not currently resolving to an operating website but capable of doing so should Defendants direct (together with the domain names containing KATE SPADE Marks associated with the Infringing Websites, the "Infringing Domain Names").[21]

The Infringing Websites and Infringing Domain Names are owned and controlled by a single source, either a coordinated group of individuals or entities—as reflected in the names given in WHOIS registrations for the domain—or a single individual or entity.  The Infringing Websites and Infringing Domain Names are linked by, among other ties:

- Common ownership of many of the domain names by the  registrant "wen ben zhou"[22]

- Common IP addresses shared only by a small number of domain names[23]

- Mirrored, that is identical or virtually identical, content[24]

- Click-through links on a group of Infringing Websites to second-level pages on a single Infringing Website[25]

---

[19] *Id.* ¶ 19.
[20] *Id.* ¶ 19, Ex. D.
[21] *Id.* ¶ 20.
[22] *Id.* ¶ 21.
[23] *Id.* ¶ 22-24, Ex. E.
[24] *Id.* ¶ 22(b), 25.

DWT 24487769v6 0096356-000009

- Common linking to Kate Spade's genuine social media accounts[26]

Defendants apparently frequently move their operations between Infringing Domain Names, creating new Infringing Websites associated with Infringing Domain Names while others are deactivated.[27]  Additionally, several Infringing Websites each link to a common "Contact Us" page that allows users to input communications into a web-based form, indulging their full name and email address, to contact the owner(s) of those domains.[28]  Such web-based forms generate emails to their intended recipient, originating from whichever email address is submitted with the form.[29]

Defendants clearly registered the Infringing Domain Names in bad faith: (i) they were registered after the KATE SPADE Marks had achieved widespread fame and entirely contain the KATE SPADE Marks; (ii) the Infringing Domain Names link to Infringing Websites that market, offer for sale and sell Counterfeit Goods; and (iii) the WHOIS registration information for the Infringing Domains are false and misleading.[30]

In addition to the Infringing Domain Names, Defendants have registered many other domain names containing famous house marks of other well-known brands and/or selling apparent counterfeits of other brands' goods, such as: AuthenticPrada3ShoesUKCheap.co.uk, BestNike23.com, ChanelHandsbags.com, Cheap-LouisVuitton.us and hundreds of others.[31]

To evade detection and conceal their true identities, Defendants have registered domain names associated with the Infringing Websites and the Infringing Domain Names to false

---

[25] *Id.* ¶ 22(c).
[26] *Id.* ¶ 22(d), Ex. C.
[27] *Id.* ¶ 27.
[28] *Id.* ¶ 22(e), Ex. C.
[29] *Id.*
[30] *Id.* ¶ 31.
[31] *Id.* ¶ 30, Ex. F.

addresses.[32]  The domain names of defendants Wen Ben Zhou, Zhong Liang, Wang Jiu and Tian Meng appear incomplete and invalid and do not, upon investigation resolve to valid addresses.[33] For example, defendant Huachao Chen lists a Portland, Oregon, China address and while the street name and number appear valid, investigation reveals that this is also an invalid address.[34]

Due to Defendants' deception and concealment, Kate Spade is currently unaware of the true identities and locations of Defendants, any potential other infringing websites or domain names belonging to defendants and the location of the Counterfeit Goods that are being readied for distribution.[35]  Persons and entities who source, offer for sale and/or sell counterfeit goods take every means to conceal their identities in an effort to avoid detection, and defendants in these types of cases will typically circumvent orders restraining assets that are issued with prior notice, and claim ignorance of their responsibilities while simultaneously draining their financial accounts, thereby rendering a plaintiff's right to an equitable accounting meaningless.[36]  If Defendants were given notice of an action against them they would immediately take steps to change their operation and identities (aided by the anonymity of the Internet) and to move all assets outside the reach of this court.[37]

Without the relief requested in this action, Defendants' illegal activities will continue unabated and Kate Spade will continue to suffer irreparable harm.[38]

---

[32] *Id.* ¶ 26, Ex. E.
[33] *Id.*
[34] *Id.* ¶ 26(c), Ex. E.
[35] *Id.* ¶ 28
[36] *Id.* ¶ 29.
[37] *Id.*
[38] *Id.* ¶ 16.

9

## ARGUMENT

I. **KATE SPADE IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ENJOINING DEFENDANTS' ILLEGAL ACTS**

Once a violation of the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq*., as amended (the "Lanham Act") is demonstrated, injunctive relief will readily issue.[39]  Courts have granted preliminary relief when a party's proprietary rights are threatened by the sale of potentially inferior versions of its products, bearing marks or ornamentation indicating affiliation with the moving party, based on the trademark holder's "inability to control the nature and quality of the infringer's goods . . . not because the infringer's goods are necessarily inferior."[40]

The Second Circuit holds that in order to obtain preliminary injunctive relief, a party must establish: (1) irreparable harm; and (2) either (a) probable success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation with the balance of hardships tipping decidedly in favor of the party requesting preliminary relief.[41]  This standard applies where a preliminary injunction is sought for an alleged trademark infringement.[42]  As shown below, Kate Spade meets each of these criteria.

### A.   Defendants' Sale of Counterfeit Goods Irreparably Harms the KATE SPADE Marks and Kate Spade's Goodwill and Business

The damage to a trademark owner through diminished goodwill, loss of control over reputation or loss of quality control of its products is irreparable, and such irreparable injury is

---

[39] *See, e.g., Dallas Cowboys Cheerleaders v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 205 (2d Cir. 1979); *Bos. Prof'l Hockey Ass'n v. Dall. Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1013 (5th Cir. 1975), *cert. denied*, 423 U.S. 868 (1975); *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 79 (2d Cir. 1981).

[40] *Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb, Inc.*, 698 F.2d 862, 867 (7th Cir. 1983); *accord El Greco Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d Cir. 1986); *Polymer Tech. Corp. v. Mimran*, 975 F.2d 58, 62 (2d Cir. 1992), *amended reported at* 1992 U.S. App. LEXIS 32204 (2d Cir. 1992), *aff'd*, 37 F.3d 74 (2d Cir. 1994).

[41] *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 122 (2d Cir. 1994); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979); *Firma Melodiya v. ZYX Music GmbH*, 882 F. Supp. 1306, 1311 (S.D.N.Y. 1995).

[42] *Dallas Cowboys Cheerleaders, Inc.*, 604 F.2d at 206-07.

presumed sufficient for the granting of a preliminary injunction.[43]  With respect to trademark

infringement claims, "irreparable harm may be presumed upon a showing that [a plaintiff's]

trademark is protectable and that a likelihood of confusion exists as to the ownership or source of

goods in question."[44]

Although the Second Circuit has not yet addressed the matter, some courts in this district

have applied a slightly different standard explicitly adopted by the Second Circuit in copyright

matters.[45]  Under this formulation, a plaintiff must show:  (i) a likelihood of success on the

merits; (ii) that the plaintiff will suffer irreparable injury in the absence of an injunction; (iii) that

the remedies at law are inadequate to compensate for the injury; (iv) that the balance of hardships

tips in the plaintiff's favor; and (v) that the public interest will not be disserved by the issuance

of a preliminary injunction.[46]  Under either standard, an injunction should issue in this case.

Defendants are distributing, selling, and/or offering for sale Counterfeit Goods.[47]

Defendants' Counterfeit Goods are not genuine KATE SPADE Products and were not authorized

for manufacture by or for Kate Spade, nor inspected, packaged, or approved by Kate Spade.[48]

Defendants are irreparably harming the KATE SPADE Marks and Kate Spade's business by

confusing consumers and misdirecting traffic away from authorized retailers and legitimate

websites, as illustrated by Kate Spade's documentation of consumer confusion between the

Counterfeit Goods and genuine KATE SPADE Products.[49]  "Irreparable harm 'exists in a

trademark case when the party seeking the injunction shows that it will lose control over the

---

[43] *See Paco Rabanne Parfums, S.A. v. Norco Enterps.,* 680 F.2d 891, 894 (2d Cir. 1982); *see also Home Box Office, Inc. v. Showtime/Movie Channel, Inc.,* 832 F.2d 1311, 1314 (2d Cir. 1987); *Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc.,* 754 F.2d 91, 95 (2d Cir. 1985).
[44] *Firma Melodiya,* 882 F. Supp. at 1311.
[45] *See, e.g., New York City Triathlon, LLC v. NYC Triathlon Club, Inc.,* 704 F. Supp. 2d 305, 328 (S.D.N.Y. 2010).
[46] *Id.*
[47] Brosnan Decl. ¶¶ 14-19.
[48] *Id.* ¶ 18.
[49] *Id.* ¶ 19.

11

reputation of its trademark' . . . because loss of control over one's reputation is neither 'calculable nor precisely compensable.'"[50]  Confusion between the KATE SPADE Marks and Defendants' Counterfeit Goods likely undermines Kate Spade's goodwill and reputation.[51]  This prospective loss of goodwill alone is sufficient to support a finding of irreparable harm.[52]

**B.      Kate Spade is Likely to Prevail on Its Claims for Trademark Infringement and Counterfeiting**

To prevail on its trademark infringement and counterfeiting claims, Kate Spade must prove, *inter alia*: (1) the KATE SPADE Marks are entitled to protection; and (2) there is a likelihood of confusion between Defendants' Counterfeit Goods and genuine KATE SPADE Products bearing the KATE SPADE Marks.[53]

### 1.      The KATE SPADE Marks Are Valid And Protectable

Kate Spade is the owner of all right, title and interest in and to the KATE SPADE Marks in connection with handbags, jewelry, dresses, and other fashion apparel and accessories—the very goods being counterfeited by Defendants; and its marks are the subject of multiple federal registrations, many of which are famous and/or incontestable.[54]  These registrations are *prima facie* evidence of the validity of the KATE SPADE Marks, as well as Kate Spade's exclusive right to use its KATE SPADE Marks in commerce and in connection with the goods or services specified in the registrations.[55]

---

[50] *New York City Triathlon, LLC*, 704 F. Supp. 2d at 343 (quoting *Power Test*, 754 F.2d at 95)); *see also Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971).

[51] *See* 145 Cong. Rec. S10,515 (statement of Sen. Orrin Hatch) (Speaking on the proposed ACPA, noting the trademark laws "prohibit the unauthorized uses of other people's marks because such uses lead to consumer confusion, undermine the goodwill and communicative value of the brand names they rely on, and erode consumer confidence in the marketplace generally.").

[52] *New York City Triathlon, LLC*, 704 F. Supp. 2d at 343 (citing *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 37-38 (2d Cir. 1995)).

[53] *See, e.g., Otokoyama Co. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir. 1999); *Banff, Ltd. v. Federated Dep't Stores Inc.*, 841 F.2d 486, 489-90 (2d Cir. 1988).

[54] Brosnan Decl. ¶¶ 5-13; Complaint Ex. B.

[55] *See* 15 U.S.C. § 1057(b).

DWT 24487769v6 0096356-000009

### 2. Consumers Are Likely To Be Confused As To The Source of Defendants' Counterfeit Goods

Courts in this District have found that, "where counterfeit marks are involved, it is not necessary to perform the step-by-step examination of each *Polaroid* factor[56] because counterfeit marks are inherently confusing."[57]  A counterfeit mark is (1) a non-genuine mark which is identical to or substantially indistinguishable from a registered mark which is in use; (2) which is being used for the same goods and services as the accused mark; and (3) the accused use at the time of production is not authorized by the owner of the mark.[58]

Defendants are using counterfeit marks that are inherently confusing because:  (1) the marks used by Defendants are identical to or substantially indistinguishable from Kate Spade's federally registered marks, which Kate Spade uses in commerce; (2) Defendants are offering the same type of goods as those offered by Kate Spade; (3) Defendants' use is not authorized by Kate Spade.[59]

### C. Kate Spade Will Likely Prevail on its Anticybersquatting Consumer Protection Act Claims

The Anticybersquatting Consumer Protection Act of 1996 (the "ACPA") holds civilly liable domain name registrants who in bad faith intend to profit from a domain name that "is identical or confusingly similar to or dilutive of" the distinctive or famous mark of another.[60]  In such cases, "a court may order the forfeiture or cancellation of the domain name or the transfer

---

[56] In the Second Circuit, likelihood of confusion is assessed by following the factors enunciated in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495-96 (2d Cir. 1961), *cert. denied*, 368 U.S. 820 (1961); *see also Banff, Ltd.*, 841 F.2d at 489-90.  The eight, non-exhaustive factors used to analyze whether there is likelihood of confusion are: (1) the strength of the Kate Spade's mark; (2) the degree of similarity between the Kate Spade's and defendant's marks; (3) the proximity of the products; (4) the likelihood that the senior user will bridge the gap; (5) the sophistication of the buyers; (6) the quality of the defendant's product; (7) actual confusion; and (8) the defendant's intent in adopting its own mark.  *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d at 495.
[57] *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 455 (S.D.N.Y. 2005) (internal quotation marks and citation omitted); *see also Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368, 383 (S.D.N.Y. 2010).
[58] *See* Lanham Act §§ 34(d) and 45; 15 U.S.C. §§ 1116(d) and 1127.
[59] Brosnan Decl. ¶¶ 18-19.
[60] 15 U.S.C. § 1125(d)(1)(A).

DWT 24487769v6 0096356-000009

of the domain name to the owner of the mark."[61]  Courts have often noted that one focus of the ACPA is to address counterfeit sellers who "register well-known marks to prey on consumer confusion by misusing the domain name to divert customers from the mark owner's site to the cybersquatter's own site, and target distinctive marks to defraud consumers."[62]

Defendants have registered and are using numerous Infringing Domain Names that wholly contain KATE SPADE Marks, and are plainly liable under the ACPA.

### 1.    The KATE SPADE Marks Are Distinctive and Famous

Kate Spade has invested substantively in advertising, promoting and controlling the quality of its KATE SPADE Marks and Products in the United States and throughout the world and, as a result, the KATE SPADE Marks have become famous and attained a high degree of acquired distinctiveness.[63]  Additionally, many of the U.S. registrations for the KATE SPADE Marks are incontestable, thus entitling Kate Spade to a presumption of inherent distinctiveness.[64] At least one Southern District of New York court has based a holding for Kate Spade on the fame of the KATE SPADE trademark.[65]

### 2.    The Domain Names Are Identical Or Confusingly Similar to the KATE SPADE Marks

The Infringing Domain Names are identical or confusingly similar to the KATE SPADE Marks.  The inclusion of a plaintiff's trademark combined with usage of the mark on the website has been held to be sufficient for a finding of confusing similarity for ACPA purposes.[66]  The

---

[61] 15 U.S.C. § 1125(d)(1)(C).

[62] *Lucas Nursery & Landscaping, Inc. v. Grosse*, 359 F.3d 806, 809 (6th Cir. 2004); *see also, e.g.*, *Diarama Trading Co., Inc. v. J. Walter Thompson U.S.A., Inc.*, No. 01Civ.2950, 2005 WL 2148925, at *12 (S.D.N.Y. Sept. 6, 2005); *Albert Furst von Thurn und Taxis v. Karl Prince von Thurn und Taxis*, No. 04 Civ. 6107, 2006 WL 2289847, at *13 (S.D.N.Y. Aug. 8, 2006).

[63] Brosnan Decl. ¶¶ 9-13.

[64] 15 U.S.C. § 1115(b); *24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC.*, 447 F. Supp. 2d 266, 272 (S.D.N.Y. 2006) *aff'd sub nom. 24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC*, 247 F. App'x 232 (2d Cir. 2007).

[65] *Kate Spade LLC v. Saturdays Surf LLC*, 950 F. Supp. 2d 639, 645, 648 (S.D.N.Y. 2013).

[66] *Mattel, Inc. v. Internet Dimensions, Inc.*, No. 99 Civ. 10066, 2000 WL 973745, at *3-6 (S.D.N.Y. July 13, 2000).

DWT 24487769v6 0096356-000009

fact that the most distinctive aspect of the KATE SPADE Marks ("KATE SPADE") appears without alteration in each of the Infringing Domain Names, clearly referring to Kate Spade's brand, compellingly shows that the Infringing Domain Names are identical and or confusingly similar to the KATE SPADE Marks.  Surplus generic terms such as here "authentic" and "cheap" inserted in the domains are of no moment.  As courts have "consistently found," the addition of such minor generic terms "to the disputed domain names are irrelevant."[67]

### 3.    Defendants Have Bad Faith Intent to Profit from the KATE SPADE Marks

Many of the factors going to bad faith under the ACPA[68] are present here.  As courts have consistently held, bad faith under the ACPA could hardly be clearer than in a case like this, where Defendants are using Kate Spade's famous trademarks in domain names used for selling counterfeits of KATE SPADE Products.[69]  Defendants registered the Infringing Domain Names in bad faith because they were registered after the KATE SPADE Marks had achieved widespread fame and they entirely contain KATE SPADE Marks.[70]  Additionally, Defendants' registration of the Infringing Domain Names using false identification information and registration of multiple domain names they know to be identical or confusingly similar to the famous marks of others is strong evidence of their bad faith under the ACPA.[71]  As such, Kate Spade is likely to succeed on its ACPA claims.

---

[67] *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 205 (6th Cir. 2004); *see also Spear, Leeds, & Kellogg v. Rosado*, 122 F. Supp. 2d 403, 406 (S.D.N.Y. 2000) *aff'd*, 242 F.3d 368 (2d Cir. 2000).

[68] *See* 15 U.S.C. § 1125(d)(1)(B)(i) (listing factors).

[69] *See Montblanc-Simplo Gmbh v. Montblancpensale.org*, 297 F.R.D. 242, 246-47 (E.D. Va. 2014); *Coach, Inc. v. The Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 13 C 6618, 2013 WL 5477573, at *3 (N.D. Ill. Oct. 1, 2013); *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 578 (E.D. Pa. 2002).

[70] Brosnan Decl. ¶ 31; 15 U.S.C. § 1125(d)(1)(B)(i)(IX) (incorporation of famous marks goes to bad faith).

[71] *Webadviso v. Bank of Am. Corp.*, 448 F. App'x 95, 98 n.3 (2d Cir. 2011) (citing 15 U.S.C. § 1125(d)(B)(i)(VII), (VIII)).

### D.     There is a Fair Ground for Litigation and the Balance of Hardships Tips Decidedly in Kate Spade's Favor

Even if this Court does not find Kate Spade is likely to succeed on the merits of one or more of its claims, Kate Spade respectfully submits that—for the same reasons that Kate Spade has articulated it is likely to prevail on those claims—it has at least raised serious questions going to the merits of those claims and that the balance of hardships tips decidedly in its favor.

The harm to Kate Spade from the wrongful denial of a temporary restraining order and preliminary injunction outweighs any harm Defendants may suffer from granting an injunction that would not be cured by prevailing on the merits and recovering Kate Spade's injunction bond.  The continued unauthorized use of the KATE SPADE Marks threatens Kate Spade's reputation because Kate Spade through loss of control over the quality and appearance of its products, destroying the value of the KATE SPADE Marks as source designators.  By contrast, Defendants have no legitimate interest in their illegal sales of Counterfeit Goods and unauthorized use of the KATE SPADE Marks,[72] and given "the probable outcome of this action, [loss of business] is a loss which [defendants] may justifiably be called upon to bear."[73]

## II.     THIS COURT HAS THE AUTHORITY TO ISSUE AN EX PARTE TEMPORARY RESTRAINING ORDER AND SEIZURE ORDER

Section 34 of the Lanham Act authorizes this Court to issue *ex parte* restraining and seizure orders.[74]  To facilitate the preservation of evidence, the statute authorizes the *ex parte* seizure of "goods and counterfeit marks involved in such violation and the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in such violation."[75]  Congress provided for *ex parte* remedies to ensure that courts were able to

---

[72] *Act II Jewelry, LLC v. Mu Ying Zhu*, No. 2:09CV407, 2010 WL 2521340, at *10 (E.D. Va. June 7, 2010)
[73] *Corning Glass Works v. Jeanette Glass Co.*, 308 F. Supp. 1321, 1328 (S.D.N.Y. 1970), *aff'd*, 432 F.2d 784 (2d Cir. 1970).
[74] 15 U.S.C. § 1116.
[75] 15 U.S.C. § 1116(d)(1)(A).

16

effectively exercise their jurisdiction in counterfeiting cases and to prevent counterfeiters served with a summons from disappearing or quickly disposing of inventory and related records.[76]

Once a violation of the Lanham Act is demonstrated, the issuance of an *ex parte* seizure order is appropriate upon a showing that: (i) the person obtaining the order will provide adequate security; (ii) an order other than an *ex parte* seizure order is not adequate to achieve the purposes of 15 U.S.C. § 1114; (iii) the applicant has not publicized the requested seizure; (iv) the applicant is likely to succeed in showing the defendant is using counterfeit marks; (v) an immediate and irreparable injury will occur if such seizure is not ordered; (vi) the materials to be seized will be located at the place identified in the application; (vii) the harm to the applicant in denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered; and (viii) if the applicant were to proceed on notice to the defendant, the defendant or persons acting in concert with defendant would destroy, move, hide, or otherwise make such matter inaccessible to the court.[77]

A preliminary injunction is insufficient in cases, such as the instant one, involving a ring of offshore counterfeiters who have hidden their true identities.  Without the remedy of an *ex parte* temporary restraining order and seizure, this lawsuit will be an exercise in futility.  Courts comprehending the unfortunate reality of this situation, the covert nature of counterfeiting activities, and the vital need to establish an economic disincentive for trademark counterfeiting, now regularly issue *ex parte* seizure orders.[78]

---

[76] Senate-House Joint Explanatory Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, at 12080 (Oct. 10, 1984).

[77] *See* 15 U.S.C. § 1116(d)(4)(B).

[78] *See, e.g.*, Temporary Restraining Order, Seizure Order, Asset Restraining Order, Domain Name Transfer Order and Order to Show Cause for Preliminary Injunction [Doc. No. 15], *The North Face Apparel Corp. v. Fujian Sharing Import & Export Ltd.,* No. 10-civ-1630, at 1-4 (S.D.N.Y. Mar. 2, 2010); Temporary Restraining Order [Doc. No. 7], *True Religion Apparel, Inc. v. Xiaokang Lei*, No. 11-cv-8242 (S.D.N.Y. Nov. 17, 2011); Temporary Restraining Order [Doc. No. 7], *The Nat'l Football League v. Chen Cheng d/b/a nfljerseydiscount.com*, No. 11-Civ-0344 (WHP), (S.D.N.Y. Jan. 19, 2011); Preliminary Injunction Order [Doc. No. 5] *Tory Burch LLC v, Yong Sheng*

17

Kate Spade meets each of the criteria for issuance of a temporary restraining order and

seizure order required by the Lanham Act.[79]  Kate Spade has not publicized the requested

seizure.[80]  Kate Spade has shown Defendants offer for sale and sale of Counterfeit Goods.[81]

Defendants have registered the Infringing Domain Names using false identifying information,

and are unknown to Kate Spade other than by these Infringing Domain Names and the associated

email addresses.[82]  If given notice, Defendants can and undoubtedly will simply move their

business to newly established websites, which is a small cost to their blatant illegal business.  If

this occurs, Kate Spade will suffer irreparable injury in that they will have no even remotely

adequate remedy at law to stop Defendants.

Given the nature of Defendants' counterfeiting operations, an order other than an *ex parte*

seizure order would be inadequate to achieve the purposes of 15 U.S.C. § 1114.  The harm to the

KATE SPADE Marks, as well as the goodwill in denying the application greatly outweighs the

harm to Defendants' interests in continuing to sell Counterfeit Goods.  It is thus respectfully

submitted that an *ex parte* temporary restraining and seizure order is necessary to protect Kate

Spade's trademark rights and to prevent further harm to Kate Spade and the consuming public.

## III.   KATE SPADE IS ENTITLED TO AN ORDER PREVENTING THE FRAUDULENT TRANSFER OF ASSETS

Kate Spade has shown a strong likelihood of succeeding on the merits of their trademark

counterfeiting claims, and thus Kate Spade ultimately will be entitled to an equitable accounting

---

*Int'l Trade Co., Ltd*, No. 10-Civ-9366 (DAB) (S.D.N.Y. Dec. 17, 2010); Temporary Restraining Order [Doc. No. 11], *PRL USA Holdings, Inc. v. Kiat*, No. 10-Civ-6456 (PGG) (S.D.N.Y. Sept. 1, 2010); Temporary Restraining Order [Doc. No. 13], *Farouk Systems, Inc. v. EYOU Int'l Trading Co., Ltd.*, No. 4:10-Civ-2672 (KMII) (S.D. Tex. Aug. 2, 2010); Temporary Restraining Order [Doc. No. 14], *The North Face Apparel Corp. v. Jun Song*, No. 10-Civ-5604 (LTS) (S.D.N.Y. July 23, 2010).

[79]  Plaintiff has indicated the willingness and ability to provide a bond to the Court in conjunction with the *ex parte* relief that it seeks.  *See* Plaintiff's [Proposed] Order, filed herewith.

[80] Declaration of George P. Wukoson, dated July 24, 2014 ("Wukoson Decl.") ¶ 6.

[81] Brosnan Decl. ¶¶ 14-19.

[82] *Id.* ¶¶ 26-28.

of Defendants' profits from sales of Defendants' Counterfeit Goods.[83]  As several courts of

appeals have held, this Court has the authority—pursuant to Federal Rules of Civil Procedure 64

and 65, Sections 34 and 35 of the Lanham Act, and/or the Court's inherent equitable power to

issue provisional remedies ancillary to its authority to provide final equitable relief—to issue an

order restraining Defendants' assets to ensure the availability to Kate Spade of final equitable

relief in the form of that accounting.[84]  For example, in the seminal case of *Reebok v. Marnatech*,

the district court granted Reebok a limited restraint of the defendant's assets for the purpose of

preserving same, thus ensuring the availability of a meaningful accounting after trial.[85]  The

Ninth Circuit affirmed the district court's decision stating:

> Because the Lanham Act authorizes the district court to grant
> Reebok an accounting of [defendant's] profits as a form of final
> equitable relief, the district court had the inherent power to freeze
> [defendant's] assets in order to ensure the availability of that final
> relief.[86]

In the years since *Marnatech*, courts in this District and others have routinely granted such relief

in cases similar to this one.[87]

   In determining whether to issue an order restraining a defendant's assets, a plaintiff must

show (1) a likelihood of success on the merits; (2) immediate and irreparable harm as a result of

defendants' counterfeiting activities; and (3) defendants might hide their illegal ill-gotten funds if

their assets were not frozen.[88]  Kate Spade has established these elements, and the grant of an

---

[83] *See* 15 U.S.C. § 1117.

[84]  *See, e.g., Animale Grp. Inc. v. Sunny's Perfume, Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 986-87 (11th Cir. 1995); *Reebok Int'l, Ltd. v. Marnatech Enters.*, 970 F.2d 552, 558-61 (9th Cir. 1992).

[85] *Reebok Int'l Ltd. v. Marnatech Enters.*, 737 F. Supp. 1521, 1526 (S.D. Cal. 1989), *aff'd*, 970 F.2d 552 (9th Cir. 1992).

[86] *Reebok*, 970 F. 2d at 559; s*ee also Republic of Philippines v. Marcos*, 862 F.2d 1355, 1364 (9th Cir. 1988), *cert. denied*, 490 U.S. 1035 (1989).

[87] *See* cases cited *supra*  note 76.

[88] *Reebok*, 737 F. Supp. at 1527.

injunction restraining the transfer of Defendants' assets is proper and appropriate.[89]  Defendants'

assets tied to the Infringing Websites, the Infringing Domain Names and other domain names

that they use at various times to host the Infringing Websites and to operate and sustain their

illegal business should thus be restrained.

## IV.    KATE SPADE IS ENTITLED TO EXPEDITED DISCOVERY

District courts have broad power to require early document production and to permit

expedited discovery allowing plaintiffs to take early depositions in appropriate cases.[90]

Expedited discovery may be granted when the party seeking it demonstrates:  (1) irreparable

injury; (2) some likelihood of success on the merits; (3) some connection between expedited

discovery and the avoidance of irreparable injury; and (4) some evidence that the injury that will

result without expedited discovery looms greater than the injury that defendant will suffer if

expedited relief is granted.[91]

As demonstrated above, Kate Spade is being irreparably harmed by the manufacture,

importation, offering for sale, distribution, and sale of Counterfeit Goods.  While Kate Spade has

learned some aspects of Defendants' counterfeiting activities, Kate Spade does not yet know

with any certainty the scope of those activities, the source or location of the Counterfeit Goods,

or where the proceeds from those activities have gone.  In order to stem the irreparable harm it

has suffered and is suffering, Kate Spade needs to ascertain this information without delay.

The discovery requested on an expedited basis in Kate Spade's proposed temporary

restraining order has been precisely defined and carefully limited to include only what is

essential to prevent further irreparable harm.  Discovery of Defendants' identities, as well as

---

[89] *See* Sections Argument I & II, *supra.*
[90] *See* Fed. R. Civ. P. 30(b), 34(b).
[91] *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982); *see also Twentieth Century Fox Film Corp. v. Mow Trading Corp.*, 749 F. Supp. 473, 475 (S.D.N.Y. 1990) (granting motion for expedited discovery in case involving copyright and trademark claims).

their manufacture, import, distribution, and sale of the Counterfeit Goods, unauthorized use of the KATE SPADE Marks and the location of Defendants' profits will permit Kate Spade to gain a full and accurate picture of Defendants' counterfeiting activities and ensure that these activities will be contained.  Specifically, Kate Spade needs to obtain copies of back-end website information, documents with third-party service providers, including payment processors to discover details regarding (1) identities of Defendants, (2) identities and locations of Defendants' other Infringing Websites, (3) identities and locations of Defendants' financial accounts and payment providers, and (4) the scope of Defendants' business.

Kate Spade is unaware of any reason that Defendants or third-parties cannot comply with these expedited discovery requests without undue burden.  More importantly, Defendants have engaged in numerous deceptive practices, such as concealment of their identities behind false registration information, that indicate Kate Spade may lose the opportunity for meaningful discovery without the requested relief.  Accordingly, expedited discovery should be granted.

## V.    SERVICE OF PROCESS BY EMAIL IS WARRANTED IN THIS CASE

Kate Spade requests the Court's permission to serve Defendants by registered electronic mail.  While Defendants are operating a highly-profitable business to sell Counterfeit Goods to consumers in the U.S., including in this Judicial District, they are conducting business only by email and over the Internet, such as through form websites submissions, and concealing their true identities and addresses in each of the different facets of their businesses.[92]  Given the purposeful anonymity of Defendants' operations, Kate Spade has been unable to discover Defendants' true identities and addresses.  It would thus be extraordinarily difficult if not impossible to serve Defendants unless the Court grants Kate Spade leave to serve them by electronic mail.

---

[92] Brosnan Decl. ¶¶ 14-29.

21

Fed. R. Civ. P. 4 provides flexibility in the procedures for giving defendants notice of commencement of an action in order to eliminate unnecessary technicalities in the service of process.[93]  Assuming Defendants are located outside of the U.S. and in China, Kate Spade must serve Defendants pursuant to Fed. R. Civ. P. 4(f).  Fed R. Civ. P. 4(f)(3) allows this Court to authorize service of process on an individual in a foreign country by any means not prohibited by international agreement.[94]  Both China and the United States are signatories to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters which states "[t]his Convention shall not apply where the address of the person to be served with the document is not known."[95]  In similar cases, Courts have allowed service on defendants, including in China, by email.[96]

In addition to complying with the Federal Rules of Civil Procedure, the method of service of process must comport with due process.[97]  Due process requires that any service of notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

---

[93] 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1061, at 216 (2d ed. 1987).

[94] *See Rio Props.*, *Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002); *cited by Phillip Morris USA Inc. v. Veles Ltd.*, 06 CV 2988, 2007 U.S. Dist. LEXIS 19780, at *8 (S.D.N.Y. Mar. 13, 2007) ("By design, Rule 4(f)(3), was adopted in order to provide flexibility and discretion to the federal courts in dealing with questions of alternative methods of service of process in foreign countries.") (internal quotation marks and citation omitted).

[95] Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters, November 15, 1965, Article 1. (Wukoson Decl., Ex. A).

[96] *See, e.g., Williams-Sonoma Inc. v. Friendfinder Inc.,* C06-06572 JSW, 2007 WL 1140639, at *2 (N.D. Cal. Apr. 17, 2007); Temporary Restraining Order [Doc. No. 7], *The Nat'l Football League v. Chen Cheng d/b/a nfljerseydiscount.com*, No. 11-Civ-0344 (WHP), at 10-12 (S.D.N.Y. Jan. 19, 2011); Preliminary Injunction Order [Doc. No. 5] *Tory Burch LLC v, Yong Sheng Int'l Trade Co., Ltd*, No. 10-Civ-9366 (DAB), at 9-10 (S.D.N.Y. Dec. 17, 2010); Temporary Restraining Order [Doc. No. 11], *PRL USA Holdings, Inc. v. Kiat*, No. 10-Civ-6456 (PGG), at 7 (S.D.N.Y. Sept. 1, 2010); Temporary Restraining Order [Doc. No. 13], *Farouk Systems, Inc. v. EYOU Int'l Trading Co., Ltd.*, No. 4:10-Civ-2672 (KMII), at 9-10 (S.D. Tex.  Aug. 2, 2010); Temporary Restraining Order [Doc. No. 14], *The North Face Apparel Corp. v. Jun Song*, No. 10-Civ-5604 (LTS) (S.D.N.Y. July 23, 2010); Temporary Restraining Order, Seizure Order, Asset Restraining Order, Domain Name Transfer Order and Order to Show Cause for Preliminary Injunction [Dkt. No. 15], *The North Face Apparel Corp. v. Fujian Sharing Import & Export Ltd.,* No. 10-civ-1630, at 7 (S.D.N.Y. Mar. 2, 2010); *Chanel, Inc. v. Zhixian*, No. 10-CV-60585, 2010 WL 1740695, at *4 (S.D. Fla. Apr. 29, 2010); *Chanel, Inc. v. Lin*, No. C-09-04996 JCS, 2010 U.S. Dist. LEXIS 61295, at *11-12 n.3 (N.D. Cal. May 7, 2010).

[97] *Rio Props.*, 284 F.3d at 1016-17; *Phillip Morris USA Inc.,* 2007 U.S. Dist. LEXIS 19780, at *5.

of the action and afford them an opportunity to present their objections."[98]  In similar cases, courts have found that service by email is "constitutionally acceptable" to satisfy due process.[99]

This Court and others have often permitted service of process by email to online businesses, especially in situations such as the case at hand where the defendants are conducting illicit operations and corresponding with customers solely via the Internet and email while concealing their true physical addresses and identities.[100]  This Court has recently allowed for service of process by email where, as here, anonymous defendants operating a large network of websites selling counterfeits goods conducted business only by email and utilized false contact information to avoid detection.[101]

Email service is also the most reliable way of putting Defendants on notice of this action. It has been held that where, as here, a defendant has made email its preferred or only means of contact, service by email not only comports with due process requirements, but is the method of service most likely to reach that defendant.[102]  Kate Spade has identified the following unique email addresses listed in the WHOIS registration information of the domains associated with the Infringing Websites and the Infringing Domain Names: e59e@qq.com, 2429365@qq.com,

---

[98] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

[99] *See, e.g., Rio Props.*, 284 F.3d at 1016-17; *Phillip Morris USA Inc.,* 2007 U.S. Dist. LEXIS 19780, at *8-9.

[100] *See, e. g., Phillip Morris USA Inc.,* 2007 U.S. Dist. LEXIS 19780 at *8-9; *Prediction Co. LLC v. Rajgarhia*, 09 Civ. 7459, 2010 U.S. Dist. LEXIS 26536, at *6-7 (S.D.N.Y. Mar. 22, 2010); *Tishman v. The Associated Press*, 05 Civ. 4278, 2006 U.S. Dist. LEXIS 4622, at *4-5 (S.D.N.Y. Feb. 6, 2006); *Bank of Credit & Commerce Int'l (Overseas) Ltd. v. Tamraz,* 2006 U.S. Dist. LEXIS 39256, at *17 (S.D.N.Y. June 13, 2006).

[101] Temporary Restraining Order [Doc. No. 7], *The Nat'l Football League v. Chen Cheng d/b/a nfljerseydiscount.com*, No. 11-Civ-0344 (WHP), at 10-12 (S.D.N.Y. Jan. 19, 2011); Preliminary Injunction Order [Doc. No. 5] *Tory Burch LLC v, Yong Sheng Int'l Trade Co., Ltd*, No. 10-Civ-9366 (DAB), at 9-10 (S.D.N.Y. Dec. 17, 2010); Temporary Restraining Order [Doc. No. 11], *PRL USA Holdings, Inc. v. Kiat*, No. 10-Civ-6456 (PGG), at 7 (S.D.N.Y. Sept. 1,2010); Temporary Restraining Order [Doc. No. 13], *Farouk Systems, Inc. v. EYOU Int'l Trading Co., Ltd.*, No. 4:10-Civ-2672 (KMII), at 9-10 (S.D. Tex.  Aug. 2, 2010); Temporary Restraining Order [Doc. No. 14], *The North Face Apparel Corp. v. Jun Song*, No. 10-Civ-5604 (LTS) (S.D.N.Y. July 23, 2010);  Temporary Restraining Order, Seizure Order, Asset Restraining Order, Domain Name Transfer Order and Order to Show Cause for Preliminary Injunction [Dkt. No. 15], *The North Face Apparel Corp. v. Fujian Sharing Import & Export Ltd.*, No. 10-civ-1630, at 7 (S.D.N.Y. Mar. 2, 2010).

[102] *Rio Props.*, 284 F.3d at 1017-18; *Facebook Inc. v. Banana Ads LLC*, No. C-11-3619, 2012 WL 1038752, at *2 (N.D. Cal. Mar. 27, 2012).

DWT 24487769v6 0096356-000009

1326959161@qq.com and 1900085246@qq.com.  The WHOIS registration information of Defendants Zhong Liang and Huachao Chen's Infringing Domain Names do not include email addresses, but, first, their Infringing Websites are plainly connected with an Infringing Website of defendant Wen Ben Zhou (they all mirror and share an IP address and all second-level pages) whose registration does include an email address so they can be served through this plainly connected defendant's email addresses; and, second, both  Zhong Liang and Huachao Chen's Infringing Websites allows users to input communications into a web-based form, including their full name and email address, to contact those Defendants, by which they can also be served.[103]

Given that Defendants use these email addresses and web submission forms to conduct their illicit businesses, including by interacting with customers and registering the Infringing Domain Names, Kate Spade has every reason to believe that these email addresses are regularly monitored.[104]  Kate Spade proposes to send service via email to each of the unique email addresses being used by Defendants in conjunction with their Infringing Websites, giving these connected Defendants actual notice of this action many times over.

In an abundance of caution, Kate Spade's counsel proposes to use an online service, RPost (www.rpost.com), that provides valid proof of authorship, content (email body and attachments), delivery and official time sent and received.[105]  Kate Spade will thus be able to provide digital confirmation of delivery when Defendants receive email service.

---

[103] Brosnan Decl. ¶ 22.
[104] *Id.* ¶¶ 21, 26(e), Ex. E.
[105] Wukoson Decl. ¶ 5 Ex. B.

## CONCLUSION

Based upon the foregoing, Kate Spade respectfully requests that this Court grant an order temporarily restraining Defendants from selling their Counterfeit Goods or otherwise infringing on the KATE SPADE Marks, including an order disabling Defendants' Infringing Websites, an order of seizure, an order restraining Defendants' assets, an order for expedited discovery, and an order to show cause for preliminary injunction.

Dated: July 24, 2014

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: _____

    G. Roxanne Elings
    (RoxanneElings@dwt.com)
    George P. Wukoson
    (GeorgeWukoson@dwt.com)

1633 Broadway, 27th Fl.
New York, NY 10019-6708
Telephone: (212) 489-8230
Facsimile: (212) 489-8340

*Attorneys for Plaintiff Kate Spade, LLC*

25